UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FEDERICO C. CHARLES, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-07-CV-0058 FB (NN) |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:    Hon. Fred Biery
       United States District Judge

### I. Introduction

Plaintiff Federico C. Charles brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Charles was not disabled for the purposes of the Social Security Act (the Act) and denying Charles's application for Disability Income Benefits (DIB).  Charles asks the district court to reverse the decision and to render judgment in his favor.  After considering Charles's brief in support of his complaint,[1] the brief in support of the Commissioner's decision,[2] Charles's reply brief,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend

---

[1]Docket entry # 16.

[2]Docket entry # 17.

[3]Docket entry # 20.

affirming the Commissioner's decision.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## II. Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. Administrative Proceedings

Based on the record in this case, Charles exhausted his administrative remedies prior to filing this action in federal court.  Charles applied for DIB on July 16, 1999, alleging disability beginning October 10, 1996.[5]  The alleged onset date is the day Charles injured his back while working as a concrete finisher.  The Commissioner denied Charles's application initially and on reconsideration.[6]  Charles then asked for a decision by an ALJ without a hearing.[7]  The ALJ issued a decision on February 14, 2001, concluding that Charles was not disabled within the meaning of the Act.[8]  Charles asked for review of the decision on February 26, 2001.[9]  The SSA

---

[4]See Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 186.

[6]Id. at pp. 116-7.

[7]See id. at pp. 121 & 250.

[8]Id. at pp. 127-8.

[9]Id. at p. 156.

2

Appeals Council granted the request for review on January 11, 2002, and remanded the case to an ALJ to obtain evidence from a vocational expert about Charles's occupational base and to develop a record.[10]  On June 19, 2002, the ALJ conducted a hearing and obtained testimony from a vocational expert and a medical expert.  An ALJ issued an unfavorable decision on August 29, 2002.[11]  Charles asked the Appeals Council to review the decision,[12] but the Appeals Council denied the request on January 2, 2003.[13]  The ALJ's August 2002 decision became the final decision of the Commissioner for the purpose of district-court review pursuant to 42 U.S.C. § 405(g).  Charles then filed his first lawsuit, seeking review by the district court.

As the adjudication of the first lawsuit, I reversed the Commissioner's decision and remanded the case.  I directed the ALJ to: (1) obtain testimony of a medical expert to evaluate Charles's allegations of disabling pain and the side effects of his pain medications; (2) consult a medical expert about whether Charles meets new section 1.05 of the medical listings; (3) address Charles's Tennessee workers compensation settlement; and (4) discuss the opinion by Charles's vocational expert that Charles can't work.[14]  The ALJ conducted a second hearing on March 3, 2006, and issued a third unfavorable opinion on May 26, 2006.[15]  Charles asked the appeals Council to review the decision and the Appeals Council denied the request for review on

---

[10]*Id*. at p. 161-2.

[11]*Id*. at p. 16.

[12]*Id*. at p. 8.

[13]*Id*. at p. 5.

[14]*Id*. at p. 616.

[15]*Id*. at p. 585.

December 1, 2006.  The ALJ's third decision then became the final decision of the Commissioner

for the purpose of the district court's review.  Charles filed this action seeking review of the

Commissioner's decision on January 18, 2007.[16]

### IV.  Issue Presented

> Is the ALJ's decision that Charles was not under a "disability," as
> defined by the Act, at any time between Charles's alleged onset
> date and his last date insured, supported by substantial evidence
> and does the decision comport with relevant legal standards?

### V.  Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

is limited to determining whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[17]  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."[18]  Substantial evidence "must

do more than create a suspicion of the existence of the fact to be established, but 'no substantial

evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no

contrary medical evidence.'"[19]

If the Commissioner's findings are supported by substantial evidence, then they are

---

[16]*See* docket entry # 1, Charles's complaint.

[17]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[18]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[19]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

conclusive and must be affirmed.[20]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[21]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[22]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[23]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive DIB benefits.[24]  The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[25]  A claimant shall be determined to be disabled only if his physical or

---

[20]*Martinez*, 64 F.3d at 173.

[21]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[22]*Martinez*, 64 F.3d at 174.

[23]*Id*.

[24]42 U.S.C. § 1382(a)(1) & (2).

[25]42 U.S.C. § 1382c(a)(3)(A).

mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[26]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[27]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[28]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[29]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[30]  The second step involves determining whether the claimant's impairment is severe.[31]  If it is not severe, the claimant is deemed not disabled.[32]  In the third step, the Commissioner compares the severe impairment with

---

[26]42 U.S.C. § 1382c(a)(3)(B).

[27]20 C.F.R. §§ 404.1520 and 416.920.

[28]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[29]20 C.F.R. §§ 404.1520 and 416.920.

[30]*Id.*

[31]*Id.*

[32]*Id.*

those on a list of specific impairments.[33]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[34]  If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[35]  If the claimant is still able to do his past work, the claimant is not disabled.[36]  If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[37]  If the claimant cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[38]  Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[39]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[40]

---

[33]*Id.*

[34]*Id.*

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Leggett*, 67 F.3d at 564.

[39]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[40]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

7

**B.  Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process. The ALJ first determined that Charles's insured status expired on September 30, 2001.[41]  To be eligible for disability benefits, a person must be fully insured.[42]  Because Charles was insured through September 30, 2001, the ALJ considered whether Charles was disabled on or before that date.

At step one, the ALJ determined that Charles had not engaged in substantial gainful activity since his alleged onset date—the day he injured his back.[43]  Charles sustained a back injury in his last job as a concrete finisher and has not worked since that time.  The injury served as the basis for a workers compensation award in Tennessee.  In step two, the ALJ determined that Charles is impaired by degenerative disc disease status post laminectomy at L4-L5.[44]  A laminectomy is a surgical procedure to treat a herniated disc.  Charles had a laminectomy on October 27, 1997 to treat a herniated disk at L4-5[45]—the disc between the fourth and fifth lumbar vertebrae.  "Patients who have undergone laminectomy may experience increased stress on the

---

[41]*See id.* at p. 592.

[42]*See* 20 C.F.R. § 404.110.  "To be fully insured, a person needs at least six quarters of coverage, but not more than forty quarters of coverage."  NAT'L ORG. OF. SOC. SEC. CLAIMANTS REPRESENTATIVES, 1-2 SOC. SEC. PRACTICE GUIDE § 2.03 (LexisNexis).  The formula for determining fully insured status is a little more complicated than that, but Charles does not challenge the Commissioner's determination about his date last insured.

[43]SSA record, p. 593.

[44]SSA record, p. 598.

[45]*Id.* at p. 422.

posterior articulations, which may lead to degenerative changes which require spinal fusion."[46]

In a spinal fusion, a surgeon adds hardware and bone to the spine so that  the area that is moving

will have less mobility and hopefully relieve some of the pain.[47]  Charles's treating physician has

recommended spinal fusion—adding hardware and bone to the spine — but Charles has declined

the surgery.[48]  The ALJ characterized Charles's back condition as a severe impairment.[49]  In step

three, the ALJ determined that Charles's back condition did not meet or medically equal one of

the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1) prior to the

date last insured.[50]  Section 1.04 requires evidence of "motor loss (atrophy with associated

muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . . ."[51] The ALJ

explained that the medical expert testified that Charles's back condition does not meet section

1.04 (disorders of the spine) of Appendix 1 (or section 1.05 of the old listings) because Charles

has no motor loss, no sensory loss, and no deep tendon reflex loss.[52]  In step four, the ALJ

determined that Charles has the residual functional capacity to do sedentary work, and to perform

_____

[46]*See* ATTORNEYS' TEXTBOOK OF MED.: MANUAL OF TRAUMATIC INJURIES § 27.06 (Matthew Bender 2003).

[47]SSA record, pp. 443-4.  *See* J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. I-2768 (Matthew Bender 2005) (defining an interbody spinal fusion as "[a]n operation to fuse or unite vertebrae in which the union or fusion is between the bodies (principal masses) of the vertebrae.  A piece of bone may be inserted into the intervertebral disk or in place of the disk.").

[48]SSA record, pp. 443-4.

[49]*Id*.

[50]*Id*. at p. 600.

[51]*See* 20 C.F.R., pt. 404, subpt. P, appx. 1, § 1.04A.

[52]SSA record, p. 600.

work which involves lifting or carrying up to 10 pounds and standing and walking for 2 hours in an 8-hour day.  The ALJ also determined that Charles needs a sit/stand option which permits him to change positions periodically to reduce back discomfort; he is limited to work involving simple, repetitive tasks due to pain and the side effects of medication; he must avoid exposure to vibration, and he can occasionally climb, stoop, crouch, crawl or kneel.[53]  The ALJ determined that Charles is functionally illiterate in English and cannot speak English at a functional level. At step 5, the ALJ determined that although Charles's residual functional capacity does not permit him to perform the full range of sedentary work, jobs exist in significant numbers in the national economy that Charles can perform.[54]  Thus, the ALJ concluded that Charles was not disabled prior to the expiration of his insured status.[55]

**C.  Charles's Allegations of Error**

Since the filing of his application in 1999, Charles has challenged almost every aspect of the ALJ's determinations about his case.  In this lawsuit, he focuses on three areas: the ALJ's determination that he doesn't meet a listed impairment, the ALJ's consideration of his allegations of pain, and the ALJ's treatment of the side effects of his pain medication.  After studying the evidence in this case in light of Charles's complaints, I conclude that substantial evidence supports the ALJ's conclusion that Charles was not disabled under the Act prior to the expiration of his insured status and that the ALJ did not err in applying the applicable law.

Charles first challenges the ALJ's step three determination that his back condition does

---

[53]SSA record, p. 605.

[54]*Id*. at p. 18.

[55]*Id*. at pp. 605-6.

not meet or medically equally section 1.04 of Appendix 1.[56]  Charles maintains that the ALJ

failed to consider all relevant evidence in making his step three determination.[57]  Charles relies

on a revision to the SSA regulations about how the Commissioner makes findings about medical

equivalence.[58]  Charles contends the ALJ failed to consider evidence about his pain and about the

effects of his pain medication.[59]

The SSA revised its regulations about the processing of claims for disability benefits,

effective March 31, 2006, in part, to clarify that the SSA considers all relevant evidence in

making a finding about whether a claimant's impairment or a combination of impairments meets

or medically equals a listing.[60]  Because the change represented a revision rather than a

substantive change as Charles suggests, the ALJ was required to consider "all evidence in

[Charles's] case record about [his] impairment(s) and its effects on [him] that is relevant to th[e]

finding"[61] in determining whether Charles's back condition meets or medically equals section

1.04, with or without the revision.  Charles argues that the ALJ rejected his claim that his back

condition equals section 1.04 solely because the medical expert testified that Charles has no

motor loss, no sensory loss and no deep tendon reflex loss,[62] but Charles mis-characterizes the

---

[56]*See* docket entry # 16, pp. 1-4.

[57]*Id.*

[58]SSA record, p. 540.

[59]*See* docket entry # 16, p. 2.

[60]*See* Evidentiary Requirements for Making Findings about Medical Equivalence, 71 Fed. Reg. 10,419, 10,421 (Mar. 1, 2006) (to be codified at 20 C.F.R. Parts 404 & 46).

[61]20 C.F.R. § 404.1526(c).

[62]*See* docket entry # 16, p. 3.

ALJ's decision.

Before stating that Charles's impairment is not severe enough to meet or medically equal a listed impairment,[63] the ALJ thoroughly discussed the medical evidence.[64]  The ALJ's discussion specifically recognized that Charles's doctors have treated him for low back pain since his back injury in 1996.  The ALJ then discussed the medical expert's testimony.  The ALJ explained that the medical expert testified that Charles's medical record does not reflect motor loss, sensory loss and deep tendon reflex loss.  During the hearing, the medical expert pointed to the treatment notes indicating that Charles has no motor loss, sensory loss and deep tendon reflex loss.  The ALJ included those references in his decision.  The ALJ also discussed the medical expert's testimony about the sedative effects of the pain medication that Charles takes, explaining that the medical expert testified that a person taking the pain medication may experience sedative-like properties for a brief period of time, but that those properties go away with regular use.  The ALJ did not expressly state the reasons for his step three determination, but the discussion that precedes the step three finding indicates that the ALJ considered Charles's medical records, Charles's allegations of disabling pain, and the side effects of Charles's medication.  The remand of this case required the ALJ to obtain the testimony of a medical expert to evaluate Charles's allegations of disabling pain and the side effects of his pain medications. Without some indication that the ALJ relied solely on the medical expert's testimony that Charles has no motor loss, sensory loss or deep tendon reflex loss, it is unreasonable to assume the ALJ did not consider Charles's allegations of pain and his complaints about the side effects of his pain

---

[63]*See* SSA record, p. 598.

[64]*See id*. at pp. 593-7.

12

medication.  The ALJ did not make an error of law in making his step three determination because the ALJ's decision indicates that he considered all relevant evidence.  Substantial evidence supports the ALJ's determination that Charles's back condition does not meet or medically equal section 1.04–specifically, the numerous treatment notes reporting that Charles has no motor loss, no sensory loss and no deep tendon reflex loss; the evidence indicating that Charles's low back pain prevents him from working in his former capacity, and the medical expert's testimony about the effects of pain medication over time.

In his remaining arguments, Charles complains that the ALJ failed to properly evaluate the effects of his pain and the side effects of his pain medication.[65]  Charles suggests that the ALJ failed to follow the SSA's procedures for assessing a claimant's credibility about allegations of pain and other symptoms.  This complaint indirectly challenges the ALJ's step four determination about Charles's residual functional capacity.

Charles maintains that low back pain and drowsiness caused by his pain medication prevents him from doing any type of work.  The ALJ, however, determined that Charles's complaints about pain are credible to the extent that Charles is limited to performing sedentary work.[66]  The ALJ found that the side effects of Charles's pain medication limited Charles to simple, repetitive tasks.[67]  Because a credibility determination is an issue of fact before the ALJ,[68]

---

[65]*See* docket entry # 16, pp. 4-6.

[66]*Id*. at p. 600.

[67]*Id*.

[68]*See Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981) ("How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence."); Social Security Reg. 96-7p ("In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can

the district court must determine whether substantial evidence supports the ALJ's finding.

In determining whether a claimant is disabled, the SSA considers all of the claimant's symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.[69]   Other evidence includes the claimant's own statements, statements from the claimant's treating or nontreating physician, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how the claimant's impairment(s) and any related symptoms affect her ability to work.[70]   Statements about pain alone do not establish disability—"there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of . . . pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled."[71]

When a claimant complains about pain, the SSA's regulations require the ALJ to first determine whether "an underlying medically determinable physical or mental impairment(s) [exists] . . . that could reasonably be expected to produce the individual's pain. . . ."[72]   If such an

---

be believed and accepted as true."), *available at* www.ssa.gov.

[69]20 C.F.R. § 404.1529.

[70]*See id*.

[71]*Id*.

[72]Social Security Reg. 96-7p, *available* at www.ssa.gov.

impairment exists, the ALJ must then "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."[73]  In considering pain, the SSA considers the objective medical evidence and the factors listed in 20 C.F.R. § 404.1529(c)(3).  Those factors are shown below:

> (I) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms;
>
> (iii) precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;
>
> (v) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;
>
> (vi) any measures the claimant uses or has used to relieve pain; and
>
> (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.[74]

Here, the ALJ did not question that Charles's back condition is a medically determinable impairment that could reasonably be expected to produce Charles's pain.  Instead, the ALJ evaluated the intensity, persistence and limiting effects of Charles's symptoms to determine the extent those symptoms have on Charles's ability to do basic work.  Although the ALJ did not specifically address each of the above-listed factors, specific consideration supports the ALJ's determination that Charles's symptoms limit him to sedentary work involving simple, repetitive

---

[73]*Id.*

[74]*See* 20 C.F.R. § 404.1529.

tasks.

Daily activities:  The record contains little evidence about Charles's daily activities prior to the expiration of his insured status.  In May 1999, Charles stated that he did no household chores and that his only recreational activity was watching television.[75]  At that time, Charles lived with his parents.  In August 1999, he indicated that if he started to mow the lawn, he was unable to complete the job.[76]  He also stated that he could not dance, jog, or play soccer.[77]  He indicated that he listened to the radio and sometimes went to the store.[78]  The record contains other evidence about Charles's daily activities, but that evidence addresses a time frame outside of Charles's insured status.[79]

Location, duration, frequency, and intensity of pain:  Two months before he applied for DIB, Charles stated that his back pain prevented him from doing his regular job which required much stooping, bending and lifting over 50 pounds.[80]  He indicated that he was in constant pain and that the side effects of his medications make him take a nap in the morning and afternoon.[81]  One month after filing his application, Charles described his symptoms as "low back pain which

---

[75]SSA record, p. 206.

[76]*Id*. at p. 216.

[77]*Id*. at pp. 216-7.

[78]*Id*. at p. 217.

[79]*Id*. at pp. 73-7 & 266.

[80]*Id*. at p. 203.

[81]*Id*.

radiates to the right leg."[82]  He further stated that walking, standing, heavy lifting, pushing and

pulling makes his pain worse.[83]  In August 2000, he stated in a telephonic statement to his

attorney that he felt pain no matter which side he sleeps on.[84]  During his hearing in June 2002,

Charles testified that his back pain prevents him from working.[85]

Precipitating and aggravating factors.  In November 1999, Charles stated that activity makes his

pain worse and explained that he must lie down for an hour and a half to two hours when the pain

worsens.[86]

Type, dosage, effectiveness, and side effects of medication.  Charles has stated that his pain

medication alleviates his pain for about two and a half hours, but that the medication makes him

take a nap in the morning and afternoon.

Treatment other than medication.  Charles does not receive any treatment other than pain

medication.  Charles was treated by a pain management specialist in 1998.  During the treatment

period, Charles underwent several caudal epidural steroid injections over the lumbar paravertebal

musculature,[87] but the injections provided only temporary relief.[88]  Charles was also treated with a

---

[82]*Id*. at p. 216.

[83]*Id*.

[84]*Id*. at p. 249.

[85]*Id*. at p. 73.

[86]*Id*. at p. 235.

[87]"Epidural anesthesia refers to the injection of local anesthetic into the epidural space (the space outside of the dura mater surrounding the cord).  Caudal anesthesia refers to the injection of local anesthetic into the epidural space via the sacral hiatus at the lower end of the spine."  9 ROGER CICALA, M.D. & ROBERT LIEBMAN, ATTORNEYS' TEXTBOOK OF MEDICINE (3d ed.) P 58.20.

[88]*See* SSA record, pp. 340, 342, 349, 351, 352, 354.

percutaneous epidural trial of spinal column stimulator,[89] but that procedure failed to relieve Charles's pain.[90]  Charles tried physical therapy in 1998, but complained that physical therapy aggravated his symptoms.[91]

Other measures to relieve pain.  In November 1999, Charles reported that his pain had increased.[92]  He indicated that a couple of hours rest in the morning and in the afternoon provided some relief.[93]  He stated that he alternates resting with sitting, standing and walking to relieve his pain.[94]

Although Charles has long complained about pain in his lower back, his treating physicians have documented an ability to perform work that is consistent with the ALJ's determination about Charles's residual functional capacity.  Dr. Raul Marquez—an orthopaedic surgeon—has treated Charles since April 1997.  In December 1998, Dr. Marquez assessed Charles's functional capacity as follows: limited, but retains maximum capacity to lift (including upward pulling) and/or carry 50 pounds or more; frequently lift and/or carry 25 pounds;

---

[89]A "percutaneous epidural epidural dorsal column stimulator" is "[a]n electrical nerve stimulator . . . which applies the stimulation to the column (of nerves) of the spinal cord on the side of the pain. A hollow needle is inserted through the skin into the epidural space . . . of the spinal cord in the region to be stimulated.  A wire electrode is then passed through the needle to the epidural space, and the needle is withdrawn.  A second electrode is placed in a similar manner at a short distance from the first.  The electrodes are then connected to a source of electricity which allows the patient to control the intensity and the duration of the electrical stimulation.  J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. P-3351 (Matthew Bender 2005).

[90]SSA record, p. 349.

[91]*Id*. at p. 416.

[92]*Id*. at p. 231.

[93]*Id*.

[94]*Id*. at p. 237.

occasionally lift and/or carry less than about 3 hours; stand and/or walk a total of less than about 3 hours; sit a total of less than about 3 hours; and limited in the ability to push/pull.[95]  Dr. Marquez opined that Charles can occasionally kneel, but can never climb, balance, stoop, crouch, crawl, or twist.[96]  Dr. Marquez considered Charles as unlimited in reaching, handling, fingering, feeling, hearing, and speaking.[97]  In May 2000, Dr. Marquez reported that Charles can perform sedentary work with minimal discomfort.[98]  In March 2001, Dr. Marquez reported that Charles's work status had not changed.[99]  In June 2002, Dr. Marquez assessed Charles's functional capacity as follows: Charles can lift a maximum of 10 pounds; he can stand about 4 hours; he can sit for about 2 hours; he can't climb, stoop, balance, kneel, crouch, or crawl.[100]

Dr. Tim Chowdhury—a pain management specialist who treated Charles in 1998—assessed Charles's functional capacity as follows: limited, but retains maximum capacity to lift (including upward pulling) and/or carry 20 pounds; frequently lift and/or carry 20 pounds; stand and/or walk a total of less than about 6 hours; sit a total of less than about 3 hours; and limited in the ability to push/pull.[101]  Dr. Chowdhury opined that Charles can occasionally climb, balance and kneel, but that he can never stoop, crouch, crawl, or twist.  Dr. Chowdhury

---

[95]*Id*. at. p. 398.

[96]*Id*.

[97]*Id*.

[98]*Id*. at p. 466.

[99]*Id*. at p. 461.

[100]*Id*. at pp. 443-4.

[101]*Id*. at p. 381.

considered Charles as unlimited in reaching, handling, fingering, feeling, hearing, and speaking.[102]

Charles insists the ALJ did not properly consider his allegations of pain and the side effects of his medication, but the ALJ appropriately addressed those issues.  The ALJ determined that Charles's physical condition and his low back pain limited Charles to performing sedentary work and that the side effects of Charles's pain medication limited him to simple, repetitive tasks. Nothing indicates that Charles can perform no substantial gainful activity.  Charles will work with more discomfort than others who do not have his limitations, but he retains the residual functional capacity determined by the ALJ.  Substantial evidence supports the ALJ's step four determination–specifically, treatment notes by Charles's treating physicians and testimony by the medical expert.  Charles was not disabled under the Act prior to the expiration of his insured status.

## VI.  Recommendation

Because substantial evidence supports the ALJ's decision that Charles was not disabled prior to the expiration of his insured status, I recommend that Charles's request for relief (docket entry # 1) be DENIED and that the Commissioner's decision denying Charles benefits be AFFIRMED.

## VII.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those

---

[102]*Id.*

not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[103]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[104]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[105]

      **SIGNED** on October 3, 2007.

*Nancy Stein Nowak*

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[103]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[104]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[105]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).